UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWN WATERMAN,

    Plaintiff,

v.

M & K EMPLOYEE SERVICES, INC.,

    Defendant.

                                    /

Case No. 2:22-cv-11254

HONORABLE STEPHEN J. MURPHY, III

# OPINION AND ORDER
# GRANTING MOTION FOR SUMMARY JUDGMENT [17]

Plaintiff Shawn Waterman alleged that Defendant M & K Employee Services terminated his employment in violation of the Age Discrimination in Employment Act (ADEA). ECF 1, PgID 7. Defendant moved for summary judgment, ECF 17, and the parties briefed the motion, ECF 19, 30. For the following reasons, the Court will grant the motion for summary judgment.[1]

## BACKGROUND

I.    Factual Background

Defendant is a company that "provides labor and employment services for over one thousand employees to twenty-seven M&K Truck Center dealerships." ECF 17, PgID 101. Defendant employs approximately 291 people in the State of Michigan, "164 of whom are over [forty]" years old. ECF 17-2, PgID 143. Plaintiff began working

---

[1] Based on the parties' briefing, the Court will resolve the motion on the briefs without a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

for Defendant in 2017 as a manager of truck sales. ECF 1, PgID 2. Plaintiff was fifty-six years old at the time he began working for Defendant. *Id.* at 3.

Under the employment agreement, Defendant agreed to pay Plaintiff a fifteen percent commission for any new trucks that Plaintiff sold to any one of five preapproved customer accounts. *Id.* at 11. Defendant's policy is to pay commissions once the customer receives the sold truck. ECF 17-5, PgID 191. Thus, "[i]f a truck is delivered after an employee is terminated, [that] employee is not entitled to a commission." ECF 17-6, PgID 198.

An offer letter that the Plaintiff received also gave him an opportunity to earn an annual bonus. ECF 1, PgID 11. The bonus depended on Plaintiff (1) attaining certain objectives related to Defendant's annual Truck Sales Objective and (2) hiring certain new truck salesmen. *Id.* at 12. The Truck Sales Objective compared a year's net operating income (actual NOI) with the forecasted net operating income (forecasted NOI). *Id.* at 11–13. Specifically, the bonus plan provided that if Plaintiff achieved 116% or better of the forecasted NOI, he would be eligible for a $25,000 bonus. *Id.* at 13; ECF 17-4, PgID 157. Defendant only offered bonuses to active employees who were in "good standing at the time the bonus is approved to be paid." ECF 1, PgID 13.

Defendant modified the terms of the bonus plan during the COVID-19 pandemic in 2020. ECF 17-5, PgID 192. The modifications reflected that the Truck Sales Objective would factor the difference between the forecasted NOI and actual NOI for only the months of August through December 2020. *Id.*; ECF 30-2, PgID 604.

According to Plaintiff, the actual NOI for the months of August through December 2020 was 153% greater than the forecasted NOI. ECF 19-9, PgID 422. Thus, Plaintiff maintained he was entitled to a total of $125,000 in bonuses under the bonus plan. *Id.*; ECF 1, PgID 4–5; ECF 19-10, PgID 431. When Plaintiff asked Defendant's Senior Vice President Anthony Gargano in January 2021 for his bonus payments, Gargano replied that the bonus would be paid in March 2021 per Defendant's policies, which customarily pay bonuses at the end of the first quarter of every year. ECF 1, PgID 5; ECF 17-4, PgID 159.

Plaintiff sold seven new trucks to preapproved customer accounts in 2020 and in the early weeks of 2021. ECF 1, PgID 5. None of the seven trucks were delivered before Defendant terminated Plaintiff's employment on February 26, 2021. ECF 17-5, PgID 191.

Defendant terminated Plaintiff's employment for "insufficient performance." ECF 17-4, PgID 162; ECF 17-6, PgID 201 (explaining that Plaintiff was terminated "for performance reasons"). Plaintiff was fifty-nine years old, ECF 17, PgID 115, and Defendant replaced Plaintiff with thirty-three-year-old Devin Delcourt. ECF 1, PgID 6. As of year-end 2022, "Delcourt was at 283% of his performance expectations." ECF 17-6, PgID 201.

Several months later, Plaintiff had lunch with Antonie Hall, Plaintiff's former colleague who continued to work for Defendant. ECF 17-5, PgID 189. Unbeknownst to Hall, Plaintiff recorded their conversation. *Id.* at 190. According to Plaintiff, Hall

3

represented that he heard Vice President Gargano say—after Plaintiff's employment was terminated—that Defendant was "moving in a younger direction." *Id.*

Plaintiff provided the Court with a recording of a portion of the conversation between Plaintiff and Hall. ECF 19-1, PgID 336. While the quality of the recording makes it nearly impossible to decipher what is being said, the recording appears to include an exchange in which Plaintiff asked Hall: "So was it you that told me though that . . . Anthony [Gargano] actually said on a call that they . . . moving in a youth movement?" Hall answered, "No, he said . . . across the board, we're going in a different direction." Plaintiff answered, "Okay." After several inaudible sentences, Plaintiff said, "Younger direction? Wow, he said that?"

II. <u>Procedural Background</u>

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and alleged age discrimination in violation of the ADEA. *Id.* After the EEOC granted Plaintiff the right to sue, Plaintiff filed the complaint here and alleged age discrimination in violation of the ADEA. *See* ECF 1. Plaintiff alleged that Defendant unlawfully terminated his employment because of his age, unlawfully denied Plaintiff his commission, and unlawfully denied Plaintiff his bonus. *Id.* at 78. Plaintiff offered only one fact to support the claim that Defendant's actions were based on Plaintiff's age: Gargano's alleged statement that Defendant was "go[ing] in a younger direction." *Id.* at 7 (quotation marks omitted).

Defendant moved for summary judgment. ECF 17. Defendant argued that "the record is replete with evidence" showing that "Plaintiff was terminated because he

4

did not and could not do his job." *Id.* at 117. Defendant also argued that Plaintiff was fired because he could not manage the department, failed to manage dealer relationships, failed to keep track of dealership inventory, failed to hire necessary staff, failed to monitor customers' use of rental trucks, failed to submit necessary paperwork, and more. *Id.* at 117–20. According to Defendant, "Plaintiff was not eligible for a performance bonus in 2021 for his 2020 performance" because he "was not an active employee in good standing when the performances bonuses were approved in 2021." *Id.* at 103. Indeed, Plaintiff was fired in February 2021 and the bonuses were approved in March 2021. *Id.* at 110.

Defendant also argued that Plaintiff's recorded conversation with Hall cannot defeat summary judgment because it is inadmissible hearsay. *Id.* at 121–28. And Defendant maintained that Plaintiff cannot prevail using circumstantial evidence of age discrimination because Defendant's reasons for terminating Plaintiff's employment were honestly held and not pretextual. *Id.* at 128–32. The Court agrees with Defendant and will grant summary judgment.

## LEGAL STANDARD

I. <u>Summary Judgment</u>

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the

5

moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

II. ADEA

The ADEA prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment[] because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff can establish a violation of the ADEA "by either direct or circumstantial evidence." *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008) (citation omitted). "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (quotation marks and quotation omitted). "Circumstantial evidence, on the

6

other hand, is proof that does not on its face establish discriminatory animus[] but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.*

To establish discrimination, Plaintiff must prove by a preponderance of the evidence—either direct or circumstantial—that age was the "but-for" cause of Defendant's decision to fire Plaintiff. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009); *see also Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 141 (2000); *Hannon v. Louisiana-Pac. Corp.*, 784 F. App'x 444, 448 (6th Cir. 2019) ("The sole question that matters in employment discrimination cases is whether a reasonable juror could conclude that the plaintiff would have kept his job if he was not in the protected class, and everything else had remained the same.") (cleaned up).

If a plaintiff in an age discrimination case chooses to rely on circumstantial evidence, he must proceed through the burden-shifting approach laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2] *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009) (noting that while "the Supreme Court expressly declined to decide whether the *McDonnell Douglas* test applies to the ADEA," the Sixth Circuit firmly held "that the *McDonnell Douglas* framework can still be used to analyze ADEA claims based on circumstantial evidence"). "To establish a prima facie case of age discrimination under [the *McDonnell Douglas* framework], the plaintiff must show that 1) he was a member of the protected class, 2) he was subject to an

---

[2] By the same token, if a plaintiff presents direct evidence of age discrimination, he need not proceed through the *McDonnell Douglas* framework. *LaPointe v. United Autoworkers Loc. 600*, 103 F.3d 485, 488 n. 3 (6th Cir. 1996).

7

adverse employment action, 3) he was qualified for the position, and 4) he was replaced by someone outside the protected class." *Martin*, 548 F.3d at 410 (citation omitted) (alterations omitted). Plaintiff can satisfy the fourth prong by showing that he "was treated differently from similarly situated employees outside the protected class." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004). If Plaintiff proves all four prongs, "the burden shifts to [] [D]efendant to articulate a legitimate, nondiscriminatory reason for its employment action." *Martin*, 548 F.3d at 410 (quotation marks and quotation omitted). And if Defendant satisfies that burden, Plaintiff "must produce sufficient evidence from which the jury may reasonably reject [] [Defendant's] explanation." *Id.* (quotation marks and quotation omitted). In other words, Plaintiff must show that Defendant's proffered reason for its employment action is a pretext for discrimination. *Green*, 411 U.S. at 802–03.

## DISCUSSION

Defendant made several arguments in its motion. *See* ECF 17. The Court will address them in turn.

I.  Hearsay

Before discussing the merits of Defendant's argument, the Court must first address Defendant's preliminary argument that the alleged statements of Hall and Gargano—offered by Plaintiff via an audio recording—are inadmissible hearsay. The Sixth Circuit has clearly established that "inadmissible hearsay evidence cannot be considered on summary judgment." *DeBiasi v. Charter Cnty. of Wayne*, 537 F. Supp. 2d 903, 911 (E.D. Mich. 2008) (citation omitted); *see also Jacklyn v. Schering–Plough*

8

*Healthcare Prod. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999); *MacDonald v. United Parcel Serv.*, 430 F. App'x 453, 459–60 (6th Cir. 2011). And since Gargano's alleged statement is the operative fact on which Plaintiff based his age discrimination claim, *see* ECF 1, PgID 7, the nature of the Court's summary judgment analysis hinges on the statement's admissibility.

According to Plaintiff, Hall represented that he heard Gargano say in a company meeting after Plaintiff's employment was terminated that Defendant was "moving in a younger direction." ECF 17-5, PgID 189. Hall did not say whether Gargano made the statement in relation to Plaintiff's firing. *See id.* Plaintiff argued that Gargano's alleged statement "constitutes direct evidence of age discrimination." ECF 19, PgID 314.

Defendant argued that both Hall's statement and Gargano's alleged statement are inadmissible hearsay. ECF 17, PgID 123.[3] Under Federal Rule of Evidence 801(a), hearsay evidence is any "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Back v. Nestle USA, Inc.*, 694 F.3d 571, 577 n.1 (6th Cir. 2012) (quotation marks and quotation omitted). An out-of-court statement is not hearsay, however, if it is offered against an opposing party and "was made by the party's agent or

---

[3] The Court's task is limited to deciding whether Hall's and Gargano's alleged statements, standing alone, are inadmissible hearsay. At the summary judgment stage, the Court need not decide whether a piece of evidence (i.e., the audio recording) is admissible but only whether the *contents* of that piece of evidence are admissible—assuming they "could be presented in an admissible form at trial." *DeBiasi*, 537 F. Supp. 2d at 911–12.

9

employee concerning a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D).

Hall's statement about what Gargano said actually presents hearsay within hearsay; and the evidence is inadmissible unless a hearsay exception applies to both statements. *See* Fed. R. Evid. 805; *Back*, 694 F.3d at 581; *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1081 (6th Cir. 1999); *Cargill, Inc. v. Boag Cold Storage Warehouse, Inc.*, 71 F.3d 545, 555 (6th Cir. 1995); *Shell v. Parrish*, 448 F.2d 528, 533 (6th Cir. 1971). Thus, Gargano's statement is only admissible if a hearsay exception applies to *both* Hall's alleged statement—in which he recited another statement of Gargano—and the statement that the Plaintiff maintains is direct evidence of age discrimination.

Hall's statement is inadmissible hearsay. Plaintiff claimed that Hall told Plaintiff that Gargano said that the company was "moving in a younger direction." That evidence "is inadmissible double hearsay insofar as it offers [Hall's] out-of-court statement to prove an out-of-court statement made by [Gargano], which in turn is offered for its truth." *Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 378 (6th Cir. 2002). Here, Hall's statement is offered for the truth of the matter asserted—that Gargano said the company was "moving in a younger direction." And there is no hearsay exception that would render Hall's statement admissible. The only possible exception is Rule 801(d)(2)(D), which allows out-of-court statements offered against an opposing party if it "was made by the party's agent or employee on a matter within the scope of that relationship while it existed." *See also Back v. Nestle USA, Inc.*, 694

10

F.3d 571, 577 (6th Cir. 2012) (hearsay statement does not satisfy the Rule 801(d)(2)(D) exception if it does not involve a matter within the scope of the speaker's job). But neither party disputed that Hall was not involved in the decision to terminate Plaintiff. *See* ECF 17; 19. And more importantly, no evidence suggests that hiring and firing employees was within the scope of Hall's employment. *See id.*; Fed. R. Evid. 801(d)(2)(D).

What is more, the Sixth Circuit has repeatedly held that statements made by someone who was not the direct supervisor of the terminated employee are inadmissible hearsay. *Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 927–28 (6th Cir. 1999). Hall was Plaintiff's colleague, not Plaintiff's supervisor. Thus, Hall's statement is inadmissible hearsay.

As to Gargano's statement, it is inconsequential whether Gargano's statement, on its own, would be admissible hearsay because Gargano's statement is embedded within Hall's inadmissible statement. Because both levels of double hearsay must be admissible through a hearsay exception, *see, e.g., Back*, 694 F.3d at 581—and because Hall's statement is inadmissible—the Court cannot consider the statement for the purposes of summary judgment.

Without considering the inadmissible statements, there is no genuine issue of material fact as to whether Gargano said the company was "moving in a younger direction," whether Gargano fired Plaintiff because of that alleged motive, whether Gargano's statement was made in relation to Plaintiff's firing, or whether Defendant fired Plaintiff because of his age. Indeed, the recording shows—if anything—the exact

11

opposite of what Plaintiff claimed it shows. The Court has listened to the recording. In the recording, after Plaintiff asked Hall if Gargano "said on a call that they . . . [were] moving in a youth direction," Hall quickly answered, "No, he said . . . [that] across the board, we're going in a *different* direction." The only other audible portion of the recording that concerns Plaintiff's firing included Plaintiff—not Hall—saying, "Younger direction? Wow, he said that?"[4] That statement by Plaintiff is not enough alone to create a material fact dispute. The only conclusion gleaned from the recording is that Hall did *not* say that Gargano stated that the company was moving in a younger direction.

That conclusion is bolstered by the testimony of Gargano, Hall, and four other employees of Defendant, all of whom testified that Gargano never said—whether in relation to Plaintiff's firing or otherwise—that the company was "moving in a younger direction." *See* ECF 17-4, PgID 168 (Gargano denying that he "said in front of Antoine Hall that across the board [Defendant] was going in a younger direction"); ECF 17-12, PgID 220 (Hall stating that Gargano did not mention Plaintiff's termination and clarifying that he did not say "younger direction" but rather "another direction"); *see also* ECF 17-14, PgID 239; ECF 17-15, PgID 244; ECF 17-16, PgID 247; ECF 17-17, PgID 252 (Defendant's employees Brandon Zupi, Aaron Meyering, Nicholas Boulton, and Adam Pilecki testifying that "Gargano did not state that M&K was going in a 'younger direction'"). Because all the evidence contradicts Plaintiff's claim that Hall

---

[4] Notably, Hall later testified that, after listening to the recorded conversation, "Now that I listen to it, it seems like [Plaintiff] was trying to steer me to say certain things."). ECF 17-12, PgID 221.

12

told Plaintiff that Gargano said in a company meeting that the company was "moving in a younger direction," there is no genuine issue of material fact concerning whether Gargano made the alleged statement. And no evidence shows that Gargano's alleged statement was made in connection with Plaintiff's firing or even about Plaintiff's firing. *See generally* ECF 1; 17; 19. Thus, the Court will grant summary judgment for Defendant.

I.  Summary Judgment

Because the Court cannot consider the double hearsay evidence of Gargano's alleged statement, only circumstantial evidence remains to support Plaintiff's discrimination claim. *See* ECF 19, PgID 314. As noted, "[c]ircumstantial evidence . . . is proof that does not on its face establish discriminatory animus[] but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (quotation marks and quotation omitted). And if a plaintiff elects to rely on circumstantial evidence, he must proceed through the *McDonnell Douglas* framework. *See Martin*, 548 F.3d at 410.

    1.  *McDonnell Douglas* Step 1

The first step in the *McDonnell Douglas* framework requires Plaintiff to establish a *prima facie* case of age discrimination. *Martin*, 548 F.3d at 410. "To establish a prima facie case of age discrimination . . . , the plaintiff must show that 1) he was a member of the protected class, 2) he was subject to an adverse

13

employment action, 3) he was qualified for the position, and 4) he was replaced by someone outside the protected class." *Id.* (citation omitted) (alterations omitted).

Here, Plaintiff established a *prima facie* case of age discrimination. He established that he was a member of a protected class because it is undisputed that he was fifty-six years old when he was hired and fifty-nine years old when he was fired. ECF 1, PgID 2–3. He established that he was subject to an adverse employment action—termination. ECF 17-4, PgID 162. No evidence suggests that he was not qualified for the position when he was hired. *See* ECF 1; 17; 19. And Plaintiff established that Defendant replaced him with someone outside the protected class, thirty-three-year-old Devin Delcourt. ECF 1, PgID 6. Plaintiff thus established a *prima facie* case of age discrimination.

2. *McDonnell Douglas* Step 2

Because Plaintiff established a *prima facie* case of age discrimination, the burden shifts to Defendant to "articulate a legitimate, nondiscriminatory reason for its employment action." *Martin*, 548 F.3d at 410 (quotation marks and quotation omitted). Defendant did so. Defendant explained that its decision to fire Plaintiff was based on Plaintiff's repeatedly insufficient performance managing inventory, managing company finances, interacting with customers, retaining employees, and more.

The evidence supports Defendant's explanation. First, Plaintiff exhibited insufficient performance managing inventory and company finances. Despite multiple conversations with Gargano about improving his performance, Plaintiff

14

repeatedly misstated inventory. ECF 17-4, PgID 164–66. For example, Plaintiff took "parts off of inventory and put[] them on parts of other trucks that were mis-specked[] and then [did] not reinstall[] the parts on the trucks that they were borrowed from." *Id.* at 166. Plaintiff also failed to list Defendant's inventory on the company's inventory management software. *Id.* On one occasion, Gargano had to re-order a set of trucks three times because of Plaintiff's errors. *Id.* at 171. Specifically, "Plaintiff incorrectly ordered truck specifications for the bumpers, tow hooks, Pintle hooks, airdryer[,] and a catwalk." ECF 17-6, PgID 200. He "also ordered incorrect paint colors for three trucks." *Id.* And even on repeated orders, Plaintiff still ordered incorrect specifications. *Id.* at 201; *see also* ECF 17-10, PgID 211–12. Notably, Plaintiff made these mistakes in July 2020 but did not tell Gargano about them until January 2021. ECF 17-4, PgID 171.

Plaintiff's financial management was no better. Indeed, during his tenure, the two locations Plaintiff worked at "had the highest overall operating losses of all M&K dealerships." ECF 17-6, PgID 199. "[I]n July 2020, [Plaintiff] did not timely submit the necessary paperwork to receive manufacturer concessions for [nine] trucks, resulting in a loss of $120,178.32." *Id.* And it was because of these mistakes that Gargano knew—as early as the summer of 2020—that he wanted to fire Plaintiff. *Id.* at 161.

Second, Plaintiff repeatedly exhibited insufficient performance developing and retaining employees. Of the eleven employees Plaintiff hired during his tenure with Defendant, seven of them "resigned or were terminated for performance-related

15

reasons." ECF 17-2, PgID 144. And of the six new hires he was expected to make under the terms of his employment agreement with Defendant, Plaintiff hired only two. *Id.* In sum, "no one had anywhere near the level of issues with employee development or retention" as Plaintiff. ECF 17-4, PgID 164.

Third, Plaintiff exhibited insufficient performance dealing with customers. ECF 17-6, PgID 199. For instance, Plaintiff "failed to monitor [] [customers'] use of rental trucks, even after a customer's damaged truck was fixed." *Id.* Because of Plaintiff's failure to do so, Defendant "continued to pay for the customer's use of rental trucks and thus unnecessarily incurred significant costs when the rental trucks should have been turned in." *Id.* at 199–200. Gargano also discovered in April 2020 that Plaintiff "had not reassigned [eighty] customer accounts from terminated employees to current employees," causing the accounts to lie dormant and "losing potential sales opportunities." *Id.* at 201; *see also* ECF 17-9, PgID 208 (email informing Plaintiff of the issue).

Evidence outside of Defendant's allegations also supports Defendant's purported termination reason. Plaintiff testified that he did not have any experiences while working for Defendant—including with Gargano—that suggested he was being treated differently or discriminated against because of his age. ECF 17-5, PgID 176–80. And Plaintiff admitted that he remembered Gargano telling him that he was being fired because "there's spec issues." *Id.* at 180. Moreover, Defendant employs approximately 291 people in the State of Michigan, "164 of whom are over [forty]"

16

years old. ECF 17-2, PgID 143. Taken together, the evidence shows that Defendant terminated Plaintiff's employment for performance reasons.

Defendant's decision not to give Plaintiff any remaining bonus or commission amounts was likewise based on company policy and not on Plaintiff's age. Plaintiff claimed he was entitled to commissions for the seven trucks he sold in 2020 and 2021. ECF 1, PgID 5. But Defendant's policies provided that commissions are only paid once a sold truck is *delivered* to the customer. ECF 17-5, PgID 191. Thus, "[i]f a truck is delivered after an employee is terminated, [that] employee is not entitled to a commission." ECF 17-6, PgID 198. And none of the seven trucks Plaintiff sold were delivered before Plaintiff's employment was terminated. ECF 17-5, PgID 191. Defendant was not required to pay those commissions to Plaintiff.

The same is true for the bonus to which Plaintiff claimed he was entitled. The bonus plan provided that the bonuses were only available for active employees who were in "good standing at the time the bonus is approved to be paid." ECF 1, PgID 13. Defendant's practice was to consider and give bonuses at the end of the first quarter of every year, in the month of March. ECF 1, PgID 5; ECF 17-4, PgID 159. Since Plaintiff was fired in February, he was not an employee in "good standing at the time the bonus is approved to be paid"—in other words, in March 2021. ECF 1, PgID 13. Indeed, he was not an employee at all. Thus, Defendant was not required to consider or give Plaintiff any bonuses at that time.[5]

---

[5] Gargano admitted that, "if [Plaintiff [had been] employed at the time [bonuses were reviewed in March 2021], yes, he would have been paid [$125,000]." ECF 17-4, PgID 159.

17

In sum, the Court finds that Defendant carried its burden under the *McDonnell Douglas* framework of articulating a "legitimate, nondiscriminatory reason for its employment action." *Martin*, 548 F.3d at 410 (quotation marks and quotation omitted). Next, the burden shifts back to Plaintiff.

### 3. *McDonnell Douglas* Step 3

Because Defendant carried its burden, Plaintiff "must produce sufficient evidence from which the jury may reasonably reject Defendant's explanation." *Id.* (quotation marks and quotation omitted) (alterations omitted). Plaintiff must demonstrate that the reason for his termination were not "honestly held." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807–09 (6th Cir. 1998). In other words, Plaintiff must show that Defendant's proffered reason for its employment action—insufficient performance—was a pretext for age discrimination. *McDonnell Douglas*, 411 U.S. at 802–03.

Plaintiff cannot do so. As explained above, Defendant terminated Plaintiff's employment for several reasons, including his inability to manage dealerships, retain employees, meet sales objectives, oversee finances, and more. Because of Plaintiff's insufficient performance, Defendant had a "reasonable basis to be dissatisfied" with the quality of Plaintiff's work. *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001). Indeed, Gargano testified that he knew as early as July 2020 that he wanted to fire Plaintiff because of Plaintiff's repeated mistakes ordering trucks and specifying truck parts. ECF 17-6, PgID 161.

What is more, none of the testimony elicited from Plaintiff or Plaintiff's fellow employees suggests that Defendant's performance-related reasoning for firing Plaintiff was a pretext for age discrimination. Indeed, Plaintiff admitted that he never felt subjected to age discrimination during his tenure working for Defendant. ECF 17-5, PgID 192. He also testified that he never felt that he was treated differently because of his age and never overheard any comments—by Gargano or any other employee—that suggested a bias against him based on his age. *Id.* at 180. In short, the record is devoid of evidence that Defendant's reasons for terminating Plaintiff's employment are a pretext for discrimination. Plaintiff therefore cannot carry his burden under the third prong of the *McDonnell Douglas* framework. And summary judgment is warranted for Defendant.

## ORDER

The Court finds that there is no genuine issue of material fact that Defendant did not terminate Plaintiff's employment because of Plaintiff's age. Simply put, Plaintiff would have been fired regardless of his age. The Court will therefore grant Defendant's motion for summary judgment and close the case.

**WHEREFORE**, it is hereby **ORDERED** that the motion for summary judgment [17] is **GRANTED**.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

Dated: February 26, 2024